UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANDREW GAY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 4:16-cv-01469-AGF |
| | ) |
| ALLIANT CREDIT UNION, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 8) of Defendant Alliant Credit Union to dismiss Plaintiff's complaint, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will grant Defendant's motion.

## BACKGROUND

Plaintiff's complaint seeks relief for the sinking of his boat. According to the complaint, on July 20, 2000, Plaintiff executed a "Preferred Mortgage of Vessel" (the "mortgage") with respect to his boat in the amount of $145,000 in favor of Defendant, and on November 25, 2002, Plaintiff executed a line of credit in the amount of $177,000,

secured by the boat, also in favor of Defendant.[1] The terms of the mortgage provide that Plaintiff must maintain insurance for the boat.[2] (Doc. No. 4-1 at 5.)

On September 2, 2014, after Plaintiff failed to make payments on his loan, Defendant issued an "Order to Repossess," directing its agents, PAR North America and Atlas Creditor Services, to repossess the boat and, upon repossession, to upload photographs of the boat to the PAR website. However, three days later, before Defendant took possession of the boat, Plaintiff declared bankruptcy. In a September 5, 2014 Statement of Financial Affairs filed in the bankruptcy court, Plaintiff declared that none of his property had been repossessed by a creditor within the preceding year. *In re Andrew Gay*, Case No. 14-47084-705, Doc. No. 1 at 34 (Bankr. E.D. Mo. Nov. 7, 2014).

On September 8, 2014, Defendant sent Plaintiff a letter stating that Defendant took possession of the boat on September 4, 2014, that Defendant intended to dispose of the boat at a private sale after September 18, 2014, and that the boat was currently located at the office of Defendant's agent, Atlas Creditor Services in Joplin, Missouri. But this letter was plainly inaccurate, as Plaintiff admits in his complaint that the boat remained, at all relevant times, at Plaintiff's residence in St. Charles, Missouri, docked on the water. Plaintiff alleges that Defendant spoke with Plaintiff by telephone on an unspecified date

---

[1] The mortgage, which is attached to the complaint, lists United Airlines Employees' Credit Union as the creditor, but according to the complaint, Defendant is the successor in interest to that entity.

[2] On a motion to dismiss, the Court may consider exhibits attached to the complaint, as well as materials that are part of the public record and materials that are "necessarily embraced by the pleadings." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015).

and indicated that "it would take possession of the boat at [Plaintiff's] residence," and that in September 2014, Defendant dispatched an agent to secure possession of the boat but did not ultimately remove the boat from Plaintiff's residence. (Doc. No. 4 at 2.)

On October 9, 2014, Defendant filed a motion for relief from the automatic bankruptcy stay in the bankruptcy court, in order to allow it to enforce its right to repossess the boat. The bankruptcy court granted Defendant's motion on November 7, 2014, holding that Defendant "may enforce its rights against [the boat]." *In re Andrew Gay*, Case No. 14-47084-705, Doc. No. 16.

Plaintiff did not take actions to winterize the boat and did not renew his insurance policy for the boat[3] because Defendant "represented that it took possession of the boat on September 4, 2014 and because [Plaintiff] believed that Defendant was going to remove [the boat] from [Plaintiff's] property in September 2014." (Doc. No. 4 at 4.) At some point "during the winter of 2014-2015," the boat began to take on water. Plaintiff notified Defendant that the boat was taking on water and that Defendant "needed to remove the boat from [Plaintiff's] residence,"[4] but Defendant failed to remove the boat, and the boat eventually sank in March 2015. *Id.* at 3.

On or about August 11, 2015, Defendant issued to Plaintiff a "Satisfaction of Mortgage" and a letter certifying that Defendant "has no security interest in the boat." (Doc. No. 4-5.) The boat is currently underwater at Plaintiff's residence.

---

[3] Plaintiff does not allege the date on which he allowed his insurance policy to expire.

[4] Plaintiff does not allege the date on which he so notified Defendant.

Plaintiff filed his complaint in state court on August 3, 2016, asserting promissory estoppel, violation of the Uniform Commercial Code ("UCC"), negligent misrepresentation, and trespass claims, all arising out of Defendant's statements that it would repossess the boat, Plaintiff's failure thereafter to winterize or insure the boat, and Defendant's failure to remove the boat from Plaintiff's residence before the boat took on water and sank.  Plaintiff seeks compensatory and punitive damages, attorney's fees, and specific performance by Defendant to raise and remove the boat.

Defendant removed the case to this Court, invoking the Court's diversity jurisdiction on the basis that the parties are citizens of different states, and that the amount in controversy exceeds the jurisdictional minimum because the boat was worth "at least $55,850" prior to sinking, the cost to raise and remove the boat is unknown but likely high, and Plaintiff also seeks punitive damages and attorneys' fees.

In its motion to dismiss, Defendant argues that Plaintiff has not adequately alleged the elements of his claims.  Specifically, Defendant contends that Plaintiff's promissory estoppel (Count I) and negligent misrepresentation (Count III) claims fail for lack of a sufficiently definite promise or representation, and reasonable reliance thereon; that the UCC (Count II) does not apply in this case; and that Plaintiff has failed to plead a physical interference with his property, as required to state a trespass claim (Count IV). In response, Plaintiff argues that he has sufficiently pleaded each element of his claims.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Id.* at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

**Promissory Estoppel (Count I)**

Under Missouri law, the elements of a promissory estoppel claim are: "(1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." *Clevenger v. Oliver Ins. Agency, Inc.,* 237 S.W.3d 588, 590 (Mo. 2007). "Furthermore, a promisee seeking to enforce a promise under the doctrine of promissory estoppel must show that his or her reliance on the promise was reasonable." *Blackburn v. Habitat Dev. Co.*, 57 S.W.3d 378, 387 (Mo. Ct. App. 2001) (citation omitted). "In Missouri, promissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement." *Clevenger*, 237 S.W.3d at 590.

Plaintiff has failed to state a plausible promissory estoppel claim as a matter of law. With respect to the first element, the Court doubts that Defendant's representation

5

in September 2014 that it intended to repossess Plaintiff's boat remained a sufficiently definite promise after Plaintiff's September 5, 2014 bankruptcy filing. Plaintiff's bankruptcy filing stayed any repossession efforts by Defendant[5] and rendered Defendant's prior "promise" to repossess too tenuous to support a promissory estoppel claim.[6] *See Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 440 (8th Cir. 2013) ("In Missouri, it is required that a promise be as definite and delineated as an offer under contract law.").

In any event, assuming that Defendant's representations constituted definite and delineated promises, "[e]ssential to the assertion of estoppel is that the promisor should have expected or reasonably foreseen the action which the promisee took in reliance on the promise." *Zipper v. Health Midwest*, 978 S.W.2d 398, 411 (Mo. Ct. App. 1998). Here, no reasonable inference may be drawn that Defendant should have expected or foreseen, at the time of its "promises" to repossess, that Plaintiff would forego winterizing his boat and would fail to maintain insurance for the boat in reliance on that promise. Indeed, Plaintiff was required under the terms of the mortgage to maintain insurance for his boat. *See* Doc. No. 4-1 at 5; *see also In re Hopkins*, No. 90-02289, 1992

---

[5] As Defendant correctly notes, the automatic stay triggered by Plaintiff's bankruptcy filing prevented it from immediately repossessing the boat. *See* 11. U.S.C. § 362.

[6] Although Plaintiff alleges that Defendant continued to "indicate," after September 2014, that it would take possession of the boat, Plaintiff bases his promissory estoppel claim solely on Defendant's September 2014 representations. In any event, Plaintiff has not sufficiently pleaded that any of Defendant's representations after September 2014 with regard to the boat constituted a sufficiently definite promise to support a promissory estoppel claim. And Plaintiff does not suggest, in response to Defendant's motion to dismiss, that he could provide such specificity.

6

WL 102617, at *1 (Bankr. N.D. Ohio Feb. 20, 1992) ("The party in possession of the collateral . . . has a duty of reasonable care in handling and maintaining that collateral. In this circumstance, the Debtor was in possession of the collateral and had the duty of care. This duty does not shift to the secured party until, and unless, the secured party obtains possession of the goods.").

After November 7, 2014, when the bankruptcy court granted Defendant relief from the automatic stay, Defendant was permitted, but not required, to repossess the boat. *See In re Service*, 155 B.R. 512, 514 (Bankr. E.D. Mo. 1993) (holding that even where creditor "has obtained relief from the automatic stay to pursue any other remedies it has under its note and deed of trust[,] [w]hether to proceed with its remedies is within the sole discretion of [the creditor], and Debtors may not compel [the creditor] enforce its rights"). Plaintiff's complaint does not plausibly allege that Defendant ever took possession of the boat. Indeed, the only allegation suggesting that Defendant took possession of the boat is that Defendant sent Plaintiff a letter on September 8, 2014 stating that it had already taken possession of the boat and removed it to Defendant's agent's office in Joplin, Missouri. But any reliance on that plainly erroneous statement would have been unreasonable as a matter of law, in light of Plaintiff's admitted awareness that the boat remained, on September 8, 2014 and at all other relevant times, at Plaintiff's residence in St. Charles, Missouri. Moreover, the motion for relief from the automatic bankruptcy stay that Defendant filed on October 9, 2014, in Plaintiff's bankruptcy proceeding, assumes and represents that the boat was then the property of Plaintiff's bankruptcy estate. Until Defendant actually took possession of the boat, the

7

boat belonged to Plaintiff, and Plaintiff's decision to stop caring for the boat, even if made in reliance on Defendant's purported promise, was not reasonable.

The case *In re Koeller*, 170 B.R. 1019 (Bankr. W.D. Mo. 1994), although arising in a slightly different context, is instructive on this point. That case was a Chapter 7 bankruptcy proceeding in which, by stipulation of the parties, the bankruptcy court entered an Order for Relief from the Bankruptcy Stay so that a bank could foreclose on a debtor's property. Thereafter, the debtor "step[ped] out of the Bank's way so that the Bank could foreclose" on the property, but the bank ultimately "determined that it would not be economically feasible to proceed with foreclosure and take possession." *Id.* at 1023-24. In the interim, in light of the stipulation, the debtor stopped maintaining insurance on the property, and the property was thereafter severely damaged by fire and ordered to be demolished by the city, at the debtor's cost. The debtor sought to compel the bank to take charge of the property and be held liable for the demolition costs because the debtor had surrendered possession of the property to the bank. *Id.* at 1020. The bankruptcy court held that although the bank had a right to foreclose its security interest in the property, it could not be compelled to do so. *Id.* at 1024. Because the bank had not accepted possession of the property, legal title had not passed, and, therefore, "[t]he Bank [was] not the owner of the property . . . and [was] not liable for the demolition costs." *Id.* at 1024. Here, too, Plaintiff cannot hold Defendant liable for damages resulting from Plaintiff's failure to care for and maintain insurance for the boat, based merely on Defendant's representations in September 2014 of intent to repossess the boat and its subsequent failure to do so before the boat sank in March 2015.

Finally, the Court finds that Plaintiff's promissory estoppel claim also fails on the fourth element—that only enforcement of the promise could cure the alleged injustice—because Plaintiff is not truly seeking to enforce Defendant's purported promise to foreclose on its security interest. Rather, Plaintiff is seeking damages for Defendant's failure to remove the boat before it took on water and sank, including the raising of (or cost to raise) the sunken boat. *See Clevenger*, 237 S.W.3d at 591 (holding that a promissory estoppel claim, based on an insurance agent's promise that a neighbor's claim for lake contamination would be covered by a renewed policy, failed on the fourth element as a matter of law where the plaintiff insured was not seeking "the issuance of an insurance policy that would cover the risk (a promise that [the insurance agent] could not fulfill) but damages for [the insurance agent's] mistaken representation that the policy they did receive would provide coverage").

For these reasons, the Court will dismiss Count I.

**Violation of the UCC (Count II)**

In Count II, Plaintiff alleges that Defendant violated the UCC, as codified by Missouri, Mo. Rev. Stat. § 400.9-609, by "promising that it would repossess the boat and by allowing the boat to sink." (Doc. No. 4 at 5.) The particular section of the UCC relied upon by Plaintiff deals with a "secured party's right to take possession after default," and provides that a secured party "may take possession of the collateral . . . without judicial process, if it proceeds without a breach of peace." Mo. Rev. Stat. § 400.9-609(b)(2).

Nothing in this section requires a creditor to take possession of the collateral; it simply prohibits a breach of peace if a creditor chooses to repossess without judicial process. Here, no repossession took place, and the Court has found no authority (and Plaintiff has cited none) to hold a creditor liable for a breach of peace for simply deciding not to repossess after previously indicating that it would do so.[7] The Court will dismiss Count II.

**Negligent Misrepresentation (Count III)**

The elements of a claim of negligent misrepresentation under Missouri law are: "(1) the speaker supplied information in the course of his business; (2) because of a failure by the speaker to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) due to the listener's reliance on the information, the listener suffered a pecuniary loss." *Wellcraft Marine v. Lyell*, 960 S.W.2d 542, 546 (Mo. Ct. App. 1998). "The failure to prove any one of these five elements is fatal to a claim of negligent misrepresentation." *Id.*

---

[7] Moreover, a breach of peace under Missouri law appears to require a likelihood of violence or confrontation, which is not alleged here. *See, e.g., Sperry v. ITT Commercial Fin. Corp.*, 799 S.W.2d 871, 879-880 (Mo. Ct. App. 1990) (holding that "Missouri . . . . courts have expressly held that no breach of peace occurs when a repossession is non-violent, even if the debtor objects," and that where a repossession was non-violent and "the circumstances of the repossession were such that 'in all likelihood' no confrontation would materialize," there was no breach of peace under the UCC).

10

Nothing in Plaintiff's complaint suggests that Defendant failed to exercise reasonable care in representing its intent to repossess the boat.[8]  Rather, Plaintiff's allegations suggest that Defendant did in fact intend to repossess the boat in September 2014; that it was permitted to do so under the terms of the mortgage, until halted (at least temporarily) by Plaintiff's bankruptcy filing; and that it was again permitted, but not required, to do so after the bankruptcy court's November 7, 2014 order granting Defendant relief from the automatic bankruptcy stay.  *See City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 478-79 (8th Cir. 2006) (holding that a city's negligent misrepresentation claim against a telephone company failed as a matter of Missouri law where there was no evidence that the telephone company failed to exercise reasonable care in stating that it planned to have telephone cables moved by a certain date, even if it later became clear that the cables could not be moved by that date).

Moreover, as discussed above, no plausible inference could be drawn that Plaintiff's damages—admittedly caused by his own failure to winterize or maintain insurance for his boat—are the result of any reasonable reliance on Defendant's representations.  *See Jenkins v. KLT, Inc.*, 308 F.3d 850, 858 (8th Cir. 2002) ("A promisee can only recover damages for pecuniary loss incurred in reasonable reliance on a misrepresentation negligently made by the promisor").  Therefore, the Court will dismiss Count III.

---

[8]  It could be plausibly alleged that Defendant's representation on September 8, 2014 that it had *already* repossessed and removed the boat was negligently made, but any reliance by Plaintiff on such representation would have been unjustified as a matter of law, in light of Plaintiff's awareness that the boat remained at all times at his residence.

**Trespass (Count IV)**

Under Missouri law, "[a] trespass is a direct physical interference with the person or property of another." *Hansen v. Gary Naugle Constr. Co.*, 801 S.W.2d 71, 74 (Mo. 1990). "The essence of trespass is the invasion of the property of another." *Local No. 682 Health & Welfare Trust Fund v. Whiting*, No. 91-1575-C-7, 1992 WL 799413, at *2 (E.D. Mo. May 19, 1992).

Plaintiff's complaint alleges that Defendant "took constructive possession of the boat on or about September 4, 2014," and Defendant's failure thereafter to remove the boat from Plaintiff's residence constituted a trespass to Plaintiff's property. (Doc. No. 4 at 7.) However, as discussed above, neither possession of, nor title to, the boat ever passed to Defendant as a matter of law. *See In re Koeller*, 170 B.R. 1019, 1023-24 (Bankr. W.D. Mo. 1994). The boat remained at all relevant times in Plaintiff's ownership, and Plaintiff has not alleged any action of Defendant that could plausibly constitute a physical interference with Plaintiff's property. Count IV will be dismissed.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss is **GRANTED**. (Doc. No. 8.)

A separate Order of Dismissal will accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 4th day of January, 2017.